First case this morning is a consolidated matter. It is 4110205 and 4110350 in re Estate of Mercier for the appellant Gordon Gates and Chad Skarpiak and for the appellee Cheryl E. Are you gentlemen splitting your time? No. Okay, you may proceed. Thank you. Good morning. Good morning. Your honors, this is a, as you noted, a consolidated appeal because we had some orders entered after the notice of appeal came down. And I think that situation is sort of indicative of how this whole case has ended up here in front of your honors. This is a situation where we had a fairly straightforward will. Leroy Mercier's will had a clear and ambiguous provision regarding how he wanted to handle three pieces of real estate. And that those pieces of real estate were to be handled differently than the rest of his estate in that they were to go into a trust. They were to be, the will itself specifically noted that the property was to be transmitted to my client, Jody, as trustee for her sister, Rhonda. Now, obviously, there was a, I guess, a codicil as well, but that didn't change much. The fact of the matter is he had a clear statement of what he wanted to have happen. Now, we can read into that will and that codicil why he wanted to do it, but I don't think it's necessary. We understand that he did indeed create this trust. No one has challenged this will. No one has challenged, asserted that the will is invalid for any other reason. The will states what Leroy wanted to do with his property. And without citing any cases, we all understand that in the state of Illinois, a person is entitled to do what he wants to with his estate as long as it's not a violation of public policy and he's done it and the court is obligated to effectuate the intent of the testator absent some drastic, some extraordinary evidence necessary to overturn that intent. Now, as you can imagine in this case and you can see from the docket, this provision in the will created problems between the sisters. I can't imagine that Leroy didn't anticipate those problems, but the problems ensued and there were various pleadings and things filed. And early on in the case, in March of 2010, Rhonda, who was at that time represented by a different attorney in a different law firm, filed a motion to remove Jody as the trustee. In that motion, there were allegations made that Jody was misconstruing Leroy's intent, had a different idea about the way the trust property was to be administered, but there were no allegations that she was engaged in any sort of misconduct. It was more of almost a philosophical issue. Weren't there allegations that she delayed establishing the trust? Correct. And she wasted estate assets? Well, there was an argument made that she had in her mind that her belief was her father wanted her to keep it there for everybody to enjoy. It wasn't, I guess what I'm trying to say, it wasn't a situation where there was anything evil, there wasn't like she's misspending the money. You're arguing the facts to me, but I'm asking about the allegations. Yes, that's in there. Absolutely. Yes. Correct. However, what I think is important in that motion is that that motion filed in March did not request that the trust be terminated. It did not request that Rhonda be appointed as a trustee. All it asked is that someone who was disinterested, in fact, specifically what it asked is that someone who was disinterested, somebody who wasn't one of the sisters would be appointed as the trustee. Now, in our opinion, based upon the docket itself, that motion was essentially abandoned. It was never set for hearing. It was never argued, at least in the docket. There's no reflection of it. Of course, Rhonda changed attorneys. The matter then doesn't come before the court again for nine more months. During that period of time, it's clear from the record that there were attempts to come up with some solution to the problems. In the end, there was no solution. The upshot of that is that a proposal was put together by Rhonda for the administration of this trust. That proposal, crucially, it goes for pages and pages. But again, that proposal does not suggest that Rhonda be appointed the trustee. It does not suggest that the trust itself be terminated. All it suggests, and it's very lengthy and very detailed, it suggests ways to administer the trust. It asks the court to order the trust to be funded. Then it asks the court to put certain restrictions and instructions regarding how the trust estate is to be administered that are in addition to what's actually in the trust. That is the pleading that's before us, is this proposal. It clearly accepts the fact that my client is going to continue to be, or not my client because my client is the estate, but that Jody Martin is going to continue to be the trustee of the trust. In fact, the proposal includes a refunding bond, which notes that Jody Martin would be the trustee of this trust. All this was argued at the December 17th hearing? The only thing that was argued, as far as the record reflects, was this proposal. By the way, where is the record? We don't have one. There was no transcript. There was no bystanders report prepared. How can you appeal without a record? It's an issue that I can't resolve because we were not aware of what was going to transpire at that hearing. We did not have a court reporter at that hearing. The motion was set for an argument regarding the proposal. There is no record. We have not prepared a bystanders report. There was no indication there was going to be... Why isn't there a bystanders report? Good question. First of all, we were not aware, based upon the docket itself, the court's order, and the notice of hearing, that there would be anything in that hearing which would be relevant to this appeal. I still don't think there is. We did not prepare a bystanders report because we didn't think anything that happened at that hearing would be interesting. Were you at the hearing? I was not, no. Mr. Scrow was. He represented the parties at the time. All I can tell you is that Mr. Scrow is a competent, experienced attorney, and I don't know what happened at that hearing. I do know what was supposed to happen at that hearing, and what the court's orders suggest happened at that hearing, and what the proposal that was submitted by the parties suggested happened at that hearing. None of it had anything to do with what this appeal is about. There is no reference anywhere, and perhaps the other point I'd like to make is the issue of what happened in that December 17th hearing did not become noticeable to me until well after the date to prepare a bystanders report has passed, and I submit to you there is no evidence before you that anything happened in that hearing which is relevant to this case because all that was said was the hearing on the argument regarding the proposal for the distribution of the assets, and we would have no problem with that. That's not the issue. The issue is the judge went far, far afield of what was presented at that hearing, what was noticed up at that hearing, and... You don't know what happened at the hearing. Well, I know what was supposed to happen at the hearing, and I know what the judge's order references. The judge's order does not reference that he took into account any evidence regarding the removal of Jody Martin. The court entered its order on February 4th, 2011, right? Correct, the first one. And then on February 14th, Jody filed a petition to clarify the order... Correct. ...saying that she interpreted the order to require dissolution of the trust and distribution of the corpus to Rhonda as a life tenant free of trust. Right. That's her interpretation? Well, her interpretation I think is accurate. That's what the order did. It says that the property is to be distributed to Rhonda with a life estate, and Jody's response was exactly what I'm saying is, whoa, judge, where'd this come from? This came completely out of left field. We were here to talk about how to administer this trust, how we were going to set limits on how the property was going to be rented and who was going to pay the utilities, and all of a sudden, literally out of the blue, we get an order that says this trust no longer exists. We're going to do something that Leroy Mercier never intended. In fact, we're going to do the exact opposite. We're going to give it to Rhonda. She gets it straight up. And that's what Jody's motion to clarify is, and I think that goes to the question of why we do this. Did the settler of the trust give Jody absolute power to do whatever she wanted to? I'm sorry, I missed the first part of your question. Did the settler of the trust, the trust instrument, give Jody the power to do whatever she wanted to with the property? No. I mean, obviously, she's a trustee. Okay, so you have a case here where there's a complaint that she's not acting properly. Absolutely. Why doesn't the judge have the power to rule on that? Well, there's no question that the judge had the power. He has the discretion to remove her, but the standard is very high. There has to be a strong evidence of misconduct, strong evidence of what – so there's really two elements, strong evidence of misconduct, waste, things of that nature, and there has to be strong evidence that what she's doing is contrary to the intent of the testimony. That's why we're here. We don't have that evidence. You want us to reverse the decision of the trial court because there's no evidence? You cannot show us anything in the evidence as to how the trial court erred, and we're supposed to reverse the trial court? No, I think – well, yes, you are, but I can show you what's in evidence, and that is the notice of the hearing and the pleading that's before the court. The pleading, the only pleading that was before the court on that day was the proposal. That's it. And I also would point out that the only people in it – and there's nothing in the record that says who was there other than Rhonda, and we have three or four exhibits, I guess, that were introduced, but I don't believe, Your Honor, it is my obligation, my client's obligation on appeal, to dig through the record, come up with something that's not even in the record to try to support what the judge did. What we're telling you is there is nothing in the record to support what the judge did. We have nothing, you have no indication anywhere in any of these pleadings that that December 17th hearing had anything to do with Jody's misconduct. We don't have that. The only thing that was set that day was the proposal regarding the distribution of the assets into the trust. In fact, Rhonda herself, in her proposal, recognizes that Jody is the trustee. There is nothing in the record that indicates – you can't assume, you can't presume that that hearing has this wonderful nugget of information or evidence. There is no indication that it ever existed. There is nothing in the judge's order. About the court's order. Excuse me? About the court's order. Well, the court's order – Does it indicate there was evidence? No. In fact, the court's order does the exact opposite. He notes in the first order, which, by the way, is mooted by the next two, he specifically states that the petitioner's petition to disqualify is mooted, is considered moot. He specifically says, I'm not ruling on that. I'm not listening to that evidence. It's moot. We're not dealing with it. So everything that we do have suggests that that hearing had nothing to do with all of the high level of evidence that they need to remove my client as trustee. Because that's really what we have. This order on February 4th is obviated by the rulings on February 28th and the 16th. The February 4th order reserved rulings on all issues raised by the pleadings? Correct. Doesn't the court reserve ruling on the petition to disqualify the trustees? Well, I think that would be a huge stretch in reading this order when it says that the petition to disqualify is moot. I mean, if he says it's considered moot, mootness means it's no longer an issue before this court. So the next sentence when he says I'm going to reserve ruling, I don't think we can assume he's talking about that issue. I think what he's talking about is the actual administration of these assets. How these assets are going to be passed out, whether there's going to be deeds, whether there's going to be leases, how that's going to be handled. That's what he's talking about. Otherwise, why would he have this sentence and you're saying it's considered moot? And then the order in February 28th, and I guess it's March 16th, which is really what we're hearing appealed, does something completely different. It couldn't be any more different. In the first order, he destroys the trust and says there's not going to be one. Then he changes his mind. Based on nothing, as far as we can tell, there was no further evidence. He decides, okay, you know what, I'm not going to terminate the trust. I'm going to only kind of terminate it in that I'm going to appoint the beneficiary of the trust as the trustee. Again, couldn't be any more different than what Leroy wanted to have happen. Did you file a post-judgment motion? No. I mean, there was the motion to clarify, this order came out, and that was it. Why don't you tell the trial judge that you don't know what evidence he's relying on instead of telling us? That's what the motion to clarify was. We did it once. I mean, I don't know how many times we have to go back. We filed a motion to clarify saying, Judge, what were you looking at? We don't understand this. We went in on a proposal to distribute assets, and next thing you know, you've terminated the trust. We specifically said, what were you looking at? This is what we got, this handwritten order. I don't know how many times we have to go back to the judge and say, Judge, okay, we don't understand this one. At some point in time, it became obvious that this was not going to get sorted out, and I think we're entitled at some point in time to say, I think this judge is not quite getting this. We're going to ask the appellate court to give us some instruction. I think the series of orders that we have in front of the court should be sufficient to justify what we did, which was a motion to explain. It wasn't a post-trial, Judge, you're wrong. It was, we don't even get this. And then we get an order that completely reverses it. At that point in time, I think we're entitled to bring it to your honors. I agree. And as an attorney who practices in the probate court quite often, these kinds of orders are infuriating and frustrating and becoming more and more prevalent, and that is orders that do not explain where they're coming from. Judge Zappa has been on the bench a long time, is a friend of mine and does a great job. I don't mean to impugn him. However, these orders make your job very difficult, make my job very difficult, makes this appeal really hard to argue because I don't know what he was thinking. You don't know what he was thinking. Again, why don't you ask him what he was thinking? Why do you tell us that whatever he was thinking was wrong? That's what the motion to clarify was. I guess the question I have is how many of those do I need to file? I file one and I say, Judge, I don't get this. And by the way, motions to clarify frighten me because they've been found to not be post-trial motions and I don't know exactly what they are, but this one made sense. Motion to clarify, Judge, I don't understand this. And instead of getting a nice, long order that said, well, here's what I was thinking, this is what my plan was, I get a short little order that completely changes what he did the first time. Now he doesn't explain what he did the first time, he reverses it. So at that point, I don't know what else to do. I'm done. I've asked him. I've not gotten an answer. There is a certain point in time when you don't really want to go back and ask again. So this is the situation that we find ourselves in is an order that is completely different from what anybody thought was going to have happen. And I submit them and I say, anybody, I'm including Rhonda. Rhonda did not ask that she be appointed the substitute trustee. She did not ask that the trust be terminated. Her motion was simply, let's get it rolling, which was a good motion. Thank you. Thank you. We'll have her voted. Ms. Neal. Thank you, Ron. May it please the Court. We're here, of course, representing Rhonda Mercer to urge this Court to affirm the trial court's order. I've listened to your questions. And the main problem here is that the appellate counsel was not present at the hearing in December when the judge heard evidence concerning the executor's misconduct relative to this estate. He heard the evidence. Now, which hearing was this? December 17th. He had before him the pleadings that had begun questioning the executor's misconduct, going back to the motion to terminate independent administration, the motion to disqualify the trustee. Once the independent administration was terminated, the executor was required to file an accounting and an inventory. Objections were filed, very specific objections to the thousands of dollars that had been misspent on non-essential repairs, her expending the limited resources of this estate and making it insolvent. Those objections were accompanied with a petition to compel the distribution of this specifically agreed property. This was real estate in which Rhonda Mercer maintained her principal residence for some 20 years before the decedent died. She was very interested in making sure that she was going to have a roof over her head and that the will was going to be followed. We have no problems with this will. The will did not cause the problems. The misunderstanding occurred at a reading of the will that was conducted shortly after Mr. Mercer died. At that reading of the will, this non-probate, non-will statement of Weaver and Mercer was read as if it were his will. That non-will statement appears as an appendix to our brief. And it specifically was entirely contrary to what the will provided, that this property was intended to benefit Rhonda Mercer. Instead, it prohibited the rental of any of these properties. It basically prohibited the property from becoming self-sustaining so that, in fact, this trust could be maintained for Rhonda and she could continue to live in her home. The court heard this evidence at the December 17th hearing because the proposals were ordered to be filed by Judge Zappa in response to the petition to compel distribution of the specifically bequeathed property. He wanted to know, okay, if we do this, are you going to be able to sustain this trust? I mean, is what the executor telling us, that this estate is insolvent and that this property may need to be sold to pay claims of creditors and administration expenses, is that true? Or can this property be self-maintained? So, as you saw and as Mr. Gates pointed out, Rhonda's proposal went through all the expenses that the executor had outlined in her accountings of her inventory and set forth methods that this property could be maintained and be self-sustaining. She did this because the longer the delay, the more the executor was using funds of the estate to maintain the property and arguing that it's going to be insolvent. Her solution in response to the judge's order that each of us come to him with proposals on how to make this trust self-sustaining, her response was, it can't be done. It has to be sold. It has to be auctioned off. And that was clearly not the intent of Leroy Mercer, who stated in his will that this property was for the primary benefit of Rhonda Mercer, for her protection and welfare, and that the remaindermen were actually secondary. So the evidence that was heard at that December 17th hearing encompassed this non-will statement. The judge asked questions of Rhonda Mercer, who was there to testify. And although Jody Martin's lawyer was there, she did not attend. He said, I wish she was here. I have questions for her. Or is that in the record? It was not in the record because there was no court order. Well, then you shouldn't be saying it. I apologize. I guess that's one of the main problems, and you've already noted that, is that there is no record here of the proceedings that occurred that day. And it's the appellant's burden to show the record and to show that error was made, that evidence did not exist. The fact of the matter is, the presumptions are all in favor of the trial court, that he heard the correct evidence, that he acted in conformity with the law, and that he made decisions based upon the changed circumstances, that Jody Martin did not fulfill her job as executor with respect to this property. So why should he appoint her as trustee? How would her conduct change? The person that was mainly interested in this property being sustained in a trust was Rhonda Mercer. And therefore, she was the prime candidate to make sure that the property would remain self-supporting and that the beneficiaries, both her as a primary beneficiary and Remainderman, would be protected. There was mention that this came out of the blue, but it was specifically the arguments concerning the trust being terminated were a matter of the arguments that were made, even at the motion to clarify. It did not come out of the blue that this trust would be terminated or should it be continued with a different trustee. The motion to clarify, at that hearing, the judge heard arguments of Jody Martin's attorney, and the motion to clarify speaks for itself. It stated that... Do you agree that the court changed its position pursuant to the motion to clarify from the previous order? Well, if you notice, from the first order, was actually an order that tried to bring in two different concepts. We proposed order. He asked us to prepare proposed orders. And in that proposed order, there were two alternatives. One, terminate the trust. Two, go ahead and convey the property to the trustee. And the first order contained both concepts. So I agree, it was somewhat confusing. And Jody Martin...  I think that he... Yes, I think that the trial court believed that he could do that. And that one of the marching orders as we left the hearing was to avoid continuing involvement of the executor and the beneficiary. And so the proposed order attempted to do that. The fact that if the trust were to continue, that there would be additional interaction between Jody as the trustee and Rhonda as the beneficiary, was something that believed would be continuing to create conflict, that we would be in court over and over again. So I think that the first order stated that it terminated the trust, but it also had elements that indicated that the trust shouldn't be terminated. So the petition, to clarify, was an opportunity for the judge to flesh out which alternative would be better. And at that point, the thought was that in order to most closely follow Leroy Mercer's intent was to have the property remain in trust. There was the benefit of the spendthrift clause. There's the benefit of an accounting that could be done to the remainder beneficiaries. There's specific guidelines for the trustee to act, as opposed to a life estate, which is just by common law and somewhat undefined. So those arguments were made, and the court determined that the best solution to this overall problem was to appoint Rhonda as the trustee. And certainly the court has the authority to do so. As we've stated in our case law, a state of Wesson, in making the appointments, a court on a petition to appoint one trustee may appoint another, may appoint a trust company in place of an individual trustee. I mean, they have broad discretion, the trial court, has broad discretion on who to appoint. And in this particular case, he'd heard the evidence. He saw that this estate was close to insolvency. He questioned Rhonda Mercer on the factors, her background. And based upon that evidence, he made his ruling. And we submit that his ruling is correct, that he had the authority to do so, that Jody Martin's attorney was certainly there and could have objected, could have brought any of the objections that are currently being raised to the trial court's attention. And that was not done. Those objections have been waived. So we would ask this court to reaffirm the trial court's order. Am I to understand the named successor trustee was a minor and therefore was not qualified to become the trustee? That's correct. At the time of that motion, she was a minor. I believe that she probably is of age at this time. But she has not come forward and made any objection either. And I believe we put in our report that she was present at that December 17th hearing. Okay. Thank you, counsel. Rebuttal, please. At the December 17th hearing, counsel suggests all manner of evidence that was produced regarding Jody's, I guess, incompetence to serve as trustee. Obviously, we don't have that. We have no indication in the record that that took place. I would point out, however, that there is absolutely no argument regarding the second part of the judge's order, which was the appointment of Rhonda as the trustee. Now, let's assume, for argument's sake only, that there was all kinds of evidence that Jody was the wrong trustee. You have nothing that suggests that Rhonda was the right trustee. And I would point out that that appointment, that appointment above any other appointment on the planet, would be the most contrary to what the testator wanted. Clearly, the testator... Wasn't Rhonda the primary beneficiary? She was. But the will itself specifically created this trust for the protection of Rhonda from herself. That's what... When you create a trust like this, there was no trust created for any of the other kids. It was created because, obviously, the intention of the testator, the belief of the testator, was that Rhonda needed protection from her creditors, from herself, from whatever. So, if that is the intent of the testator, then putting Rhonda in charge of her own assets is exactly what the testator didn't want to have happen. And, as the court goes on and points out in its opinion, based upon the presumed size of this trust, under the section of the Trust and Trustees Act, Rhonda would then have the power to shut down the trust. Clearly, again, I'm trying to divine what Judge Zappel was doing, but if you mush all of the... That's a legal term, by the way. If you mush all of the orders together, you'll see what he says in the end is, I'm going to go ahead and accomplish what I wanted to accomplish, which is the destruction of this trust, but I'm going to do it in a little bit different way. I'm going to go ahead and appoint Rhonda as the trustee of her own trust, and then I'm going to remind Rhonda, in writing, in an order, that, by the way, Rhonda, don't forget the fact that under the Trust and Trustees Act, you have the power to terminate this trust. Why else would he put that in there? So what I guess the argument is, let's assume for the moment that Jody is not qualified. Appointing Rhonda without any evidence of her fitness, without any evidence regarding the intention of the test... Again, I keep wondering when you say without any evidence. What do you know about it? What I know is that there's nothing that suggests on that day... How do you get to appeal if you don't have any record? Well, I guess the point I'm making is, I don't get the record for every single hearing. I don't get a record on a hearing that's completely unrelated to the issues on appeal. And it is unrelated. That hearing was noticed up on the response. There is nothing in any of the judge's orders which reflects... And this is important. There's no finding in any of the orders which suggests that he's relying on anything that was said at that hearing. If I look at the record, there is no reason for an objective observer to think, boy, I should try to come up with a bystander's report for that hearing, because there's nothing that indicates anything was introduced relevant... You keep complaining about the hearing, that there was no evidence of this, no evidence of that. And then you say, well, we don't need to have a record of that hearing. We don't need a bystander's report. That seems inconsistent. I understand that. And it's inconsistent because my position is, nothing happened at that hearing. Why would I get a bystander's report? And the reason why it comes up, Your Honor, why you ask the question is because, as the appellant's attorney notes, there's some presumptions. You're entitled to assume that something happened at that hearing that would help them. I submit to you that presumption doesn't apply in this case  The hearing wasn't about removing the trustee. Why does it matter? There's no presumption that there was any evidence produced at that hearing when the hearing wasn't about this issue. That's how I think it's not inconsistent. Since there's no presumption, I have no obligation to create something about a hearing that had nothing to do with what we're talking about. And that comes back to the purpose of the hearing and the notice for the hearing. Thank you very much. Thanks to both of you. The case is submitted, and the court stands in recess until 11 p.m.